No. 1-00-0311 First Division

November 26, 2001

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

 ) Circuit Court of

Plaintiff-Appellee, ) Cook County 

 ) 

 ) No. 98 CR 23340

 )

TONY GONZALEZ, ) The Honorable

 ) Mary Ellen Coghlan,

Defendant-Appellant. ) Judge Presiding. 

PRESIDING JUSTICE COHEN delivered the opinion of the court: 

Defendant Tony Gonzalez was indicted on three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2000)), three counts of attempt (first degree murder) (720 ILCS 5/8-4 (West 2000)), two counts of aggravated battery with a firearm (720 ILCS 5/12-4.2(a) (West 2000)), two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1), (a)(2) (West 2000)) and seven counts of aggravated battery (720 ILCS 5/12-4(a), (b)(1), (b)(8)  (West 2000)).  The record reflects the entry of an order of 
nolle prosequi
 with respect to the two aggravated discharge of a firearm counts and all of the aggravated battery counts.
  In October 1999, defendant was tried before a jury in the circuit court of Cook County for the first degree murder of Hector Rivera and attempt (first degree murder) of Luis Marrero, Illuminata Nieves and Yesenia Rodriguez.  The jury found defendant guilty of first degree murder as to Hector Rivera and attempt (first degree murder) as to Luis Marrero and Illuminata Nieves.  The jury, however, found the defendant not guilty of attempt (first degree murder) as to Yesenia Rodriguez.  The trial court sentenced defendant to consecutive prison terms of 30 years for first degree murder and 6 years for each of the two attempt (first degree murder) convictions.

Defendant now appeals his convictions, asserting that: (1) the eyewitness testimony of Luis and Yesenia was insufficient to prove him guilty beyond a reasonable doubt; (2) his convictions should be overturned and a new trial granted because the prosecution misstated the law with respect to evaluating eyewitness identification testimony in closing argument; (3) 
the trial court similarly erred in instructing the jury with respect to evaluating eyewitness identification testimony; (4) the introduction of gang evidence prejudiced the jury against him and denied him a fair trial; (5)  he was denied the effective assistance of  counsel predicated on counsel's failure to object to prejudicial gang testimony as well as counsel's elicitation of testimony concerning gang-related activity and defendant's prior criminal conduct; and (6) 
because consecutive sentences were imposed, based on a matter neither charged nor submitted to a jury, his sentence was unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Based on the trial court's submission of an erroneous jury instruction with respect to the evaluation of eyewitness identification testimony, we reverse defendant's convictions and remand this cause for a new trial.  Because this issue is dispositive, we need not address the remaining issues on appeal.

BACKGROUND

The evidence introduced at defendant's trial reveals that on the evening of July 23, 1998, Luis Marrero, Hector Rivera and Waldmar Rodriguez were playing dominoes and drinking rum at  Illuminata Nieves' apartment, located at 1215 North Washtenaw in the City of Chicago.  Yesenia Rodriguez was also present.  Illuminata is the mother of Waldmar and Yesenia.  Yesenia is  Luis' former girlfriend.  Luis, Hector and Waldmar were friends who frequently visited together at Illuminata's apartment.

Around 10:30 p.m., the men ended their dominoes game.  Waldmar fell asleep in the living room and Hector, Luis, Yesenia and Illuminata went to the kitchen to have coffee.  They were drinking coffee and talking until 2 a.m. when Yesenia and Luis began arguing about Luis' alcohol consumption.  While they were arguing, Luis exited the apartment through the back door and walked down a flight of stairs to an alley.  Yesenia followed closely behind.  As Luis turned to face Yesenia (with his back to the alley), a man emerged from the alley, pointed a gun at Luis' head, and screamed "Jiver killer."  Just as the gunman began to shoot, Luis ducked.  The first shot struck Luis in his arm and the second struck him in his chest.  The second shot caused Luis to fall face down onto the sidewalk.

As Luis lay on the sidewalk, the gunman approached Illuminata's apartment, kicked in the door and began shooting at Illuminata and Hector, who were sitting on the staircase.  Illuminata suffered a gunshot wound to the throat and Hector received gunshot wounds to his back, right forearm and left inner thigh.  When the gunman finished shooting inside the apartment, he exited the building, returned to where Luis was lying and shot Luis in the back.  The gunman then turned toward Yesenia, who was pleading for her life, and struck her in the head with the butt of his gun.  The gunman finally escaped down the alley from which he had appeared.

Officer Jesus Sanchez was assigned to beat 1414, routine patrol, on the night of the shooting.  Officer Sanchez was assisting two women who were locked out of their car when he heard gunshots.  As Officer Sanchez approached his vehicle, a call came over his police radio stating that shots were being fired at 1215 North Washtenaw.  Only 2 1/2 blocks away from Washtenaw, Officer Sanchez immediately drove to that location in his squad car.  When he arrived, Officer Sanchez observed two gunshot victims and a screaming Hispanic woman.  Officer Sanchez spoke to the Hispanic woman, who identified herself as Yesenia.  Yesenia provided Officer Sanchez with a description of the clothing and complexion of the gunman.  Yesenia was unable to tell Officer Sanchez, however, whether the gunman was African-American or Hispanic.  After receiving the general description of the gunman from Yesenia, Officer Sanchez dispatched the information over his police radio.  When he concluded the call, Officer Sanchez ran down the alley in an attempt to locate the gunman.  He was unsuccessful.

Illuminata was taken to Mt. Sinai Hospital for treatment.  Shortly thereafter, she was transferred to Saint Mary's Hospital, where she underwent surgery to remove the bullet from her throat.  Luis was transported to Cook County Hospital, where he also underwent surgery.  Luis was required to remain in the hospital for a week and a half.  Hector was discovered by the police in the upstairs bathroom where he had died from multiple gunshot wounds.

On July 25, 1998, Detective Ray Guevara of the Area 5 violent crimes division of the Chicago police department went to 1215 North Washtenaw to interview Yesenia.  After a brief conversation, Detective Guevara transported Yesenia to the 14th District police station to view photographs.  The book of photographs presented to Yesenia contained photographs related to members of the Spanish Cobra gang.  On page 36 of the book, she identified defendant's photograph as the man who shot Luis, Illuminata and Hector on the evening of July 23, 1998.

On the same day, Detective Guevara went to Cook County Hospital to attempt to interview Luis, but Luis was recovering from surgery.  The following day, Detective Guevara returned to Cook County Hospital and showed Luis six loose photographs.  After viewing the photographs, Luis identified defendant as the gunman.  Luis also informed Detective Guevara that the gunman had a mark on his neck and a gold tooth.

Based on the identifications of Yesenia and Luis, Detective Guevara obtained a warrant and defendant was arrested on August 9, 1998.  On the same day, Luis and Yesenia went to Area 5 police headquarters to view a lineup.  Detective Guevara conducted two separate lineups.  Both Yesenia and Luis pointed out defendant as the gunman.        

At trial, defendant presented alibi testimony.  Edgar Torres, defendant's brother, testified that on July 23, 1998, defendant spent the majority of the day at Edgar's apartment painting a fence in the yard.  Edgar testified that defendant remained at the apartment into the evening hours.  Edgar further testified that around 9:30 p.m., Tony Gonzalez, Sr., also came to the apartment.  According to Edgar, when he went to sleep at 10:30 p.m., both defendant and Tony Gonzalez, Sr., were sitting on the front porch of the apartment.  

Defendant's father, Tony Gonzalez, Sr., corroborated Edgar's testimony.  Tony Sr. testified that he and defendant were drinking beer on Edgar's porch on the evening of July 23, 1998.  Tony Sr. further testified that he and defendant left Edgar's apartment around midnight and arrived home at approximately 12:10 a.m.  Thereafter, both sat in the living room watching television and eating sandwiches.  According to Tony Sr., defendant went to bed around 12:30 a.m.  Tony Sr. continued to watch television until 2:30 a.m.  Tony Sr. testified that defendant's room contains no windows or fire escapes and that he never saw defendant exit his bedroom.  On cross-examination, however, Tony Sr. admitted that his back was to defendant's room while he was watching television. 

Defendant also challenged the reliability of Luis' and Yesenia's identification of him as the gunman.  In support, the defense attorney elicited testimony on cross-examination concerning inadequate lighting conditions in the area of the shooting, Luis' position face down after he was shot and Yesenia's state of mind when talking with police.  Defendant also presented the testimony of a dentist, who stated that none of defendant's teeth had ever been reduced for a gold crown. 

Following closing arguments, the trial court instructed the jury on the applicable law.  Immediately thereafter, the jury retired to the jury room to begin deliberations.  A half-hour later, the jury sent a note to the court requesting to see both the Spanish Cobra gang book and the six other loose photographs the police had presented to Yesenia and Luis which Yesenia and Luis had used to identify defendant as the gunman.  The court denied the request and advised the jury to continue deliberating.  Approximately 2 1/2 hours later, the jury tendered another note stating that it was "hung."  The court advised the jury to continue deliberating.  Following additional deliberations, the jury found defendant guilty of first degree murder of Hector Rivera and attempt (first degree murder) of Luis Marrero and Illuminata Nieves, but not guilty of attempt (first degree murder) of Yesenia Rodriguez.  Defendant was sentenced to consecutive prison terms of 30 years for first degree murder and 6 years each for the two attempt (first degree murder) convictions.
  This appeal followed.

ANALYSIS

We first address defendant's argument that the trial court erred in instructing the jury with respect to evaluating eyewitness identification testimony.  According to defendant, the Illinois Pattern Jury Instruction (IPI) submitted to the jury misstated the law with respect to evaluating eyewitness identification testimony. 

The State responds that defendant agreed to the instruction submitted to the jury and that the instruction "follows the text provided by the applicable pattern jury instruction."  Furthermore, the State asserts that defendant waived the issue because he failed either to object to the jury instruction at trial or to raise the objection in his posttrial motion.

Defendant concedes that he failed to object to the jury instruction at trial or raise the objection in his posttrial motion.  Nevertheless, defendant asks this court to review the issue as plain error.  Defendant claims that the plain error exception applies to his case both because the improper jury instruction "infected the jury's ability to properly deliberate and consider the identification testimony against [defendant]" and because the evidence in this case was "closely balanced."

"The plain error doctrine (134 Ill. 2d R. 615(a)) may be applied where the evidence is closely balanced or where the error is of such magnitude that it denied the accused a fair trial."  
People v. Tisdel
, 316 Ill. App. 3d 1143, 1153 (2000).  "Plain error marked by fundamental [un]fairness, occurs only in situations which 'reveal breakdowns in the adversary system,' as distinguished from 'typical trial mistakes. [Citation.]'" 
People v. Keene
, 169 Ill. 2d 1, 17 (1995).  For this court to review an issue under the plain error doctrine, "the asserted error must be something 'fundamental to the integrity of the judicial process. [Citation.]'" 
Keene
, 169 Ill. 2d at 17. 

We find that the plain error exception applies under the circumstances presented in this case
.  The jury instruction at issue misstated the law, was confusing and denied defendant the right to a fair trial.  Additionally, the evidence presented was "closely balanced."  The State's case was based solely on circumstantial evidence through the identification testimony of Yesenia and Luis.  Both eyewitnesses identified defendant as the gunman from photographs, a lineup and in court on the day of trial.  However, on cross-examination, the defendant challenged the reliability of the identifications and elicited testimony concerning conflicting accounts of what the gunman was wearing on the night of the shooting, inadequate lighting conditions at the scene of the shooting, Luis' face-down position after he was shot and Yesenia's state of mind when talking with police.  The defendant also presented the testimony of a dentist, who stated that none of defendant's teeth had ever been reduced for a crown.  Moreover, defendant presented uncontradicted alibi testimony from his father and brother.  

The closeness of the evidence can be given some weight by the circumstances that occurred during jury deliberations.  A half-hour after the jury retired to the jury room for deliberations, it sent a note to the court requesting to see the Spanish Cobra gang book, as well as the six other loose photographs the police presented to Yesenia and Luis.  The court denied this request and advised the jury to continue deliberating.  Approximately 2 1/2 hours later, the jury tendered another note stating that it was "hung."  It was not until the court instructed the jury a second time to continue deliberating that it found defendant guilty of first degree murder of Hector Rivera and attempt (first degree murder) of Luis Marrero and Illuminata Nieves, but not guilty of attempt (first degree murder) of Yesenia Rodriguez.  

The State asserts that defendant has waived this court's review of his plain error argument on appeal because defendant failed to demonstrate in his brief why plain error should be applied to his case.  
In support, the State cites to 
People v. Nieves
, 192 Ill. 2d 487, 502-03 (2000), for the general proposition that "the failure to present an argument as to each element of plain error analysis waives that argument on appeal."  

We find the factual situation presented in 
Nieves
 clearly distinguishable.  In 
Nieves
, the defendant provided only a single sentence in his brief regarding his plain error argument.  
Nieves
, 192 Ill. 2d at 503.  Our supreme court noted that the defendant failed to argue why the evidence was closely balanced or explain why the error was so severe that it should be remedied to preserve the integrity of the judicial process.  
Nieves
, 192 Ill. 2d at 503.  Pursuant to Supreme Court Rules 341(e)(7) and 612(i) (134 Ill. 2d Rs. 341(e)(7), 612(i)), the court held that defendant had waived his plain error argument on appeal.  In the case at bar, however, defendant dedicated four pages of his brief to argue why the jury process was rendered unreliable based upon the improper jury instruction and why the evidence in his case was closely balanced.  We therefore find that defendant has adequately demonstrated in his brief that the plain error exception should be applied under the facts of this case
.

Finding the plain error exception applicable, we will address defendant's argument that the trial court submitted an erroneous jury instruction with respect to evaluating eyewitness identification testimony.  "It is well settled that a defendant's claim of improper jury instructions is reviewed under a harmless-error analysis."  
People v. Amaya
, 321 Ill. App. 3d 923, 929 (2001).  "An error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different if the proper instruction had been given."  
People v. Johnson
, 146 Ill. 2d 109, 137 (1991); 
People v. Fierer
, 124 Ill. 2d 176, 187 (1988).  

Our supreme court has outlined a two-part test for the application of the harmless error analysis.  First, we are to determine "whether any error occurred-- in other words, whether the instruction was correct."  
People v. Dennis
, 181 Ill. 2d 87, 95-96 (1998).  Second, if we find an error in the jury instruction, then we must determine "whether, in spite of that error, evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt."  
Dennis
, 181 Ill. 2d at 96.    

"[T]he test of the correctness of an instruction is not what meaning the ingenuity of counsel can attribute to it, but how and in what sense, under the evidence before them, ordinary persons acting as jurors will understand the instruction."  
People v. Lozada
, 211 Ill. App. 3d 817, 822 (1991).  "The sole function of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence."  
People v. Pinkney
, 322 Ill. App. 3d 707, 717 (2000).  "Jury instructions should not be misleading or confusing."  
Pinkney
, 322 Ill. App. 3d at 717.  

The trial judge gave the following written instruction to the jury based upon the wording of Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992) (hereinafter IPI Criminal 3d)
:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including but not limited to the following:

The opportunity the witness had to view the offender at the time of the offense; 
or

The witness' degree of attention at the time of the offense; 
or

The witness' earlier description of the offender; 
or

The level of certainty shown by the witness when confronting the defendant; 
or

The length of time between the offense and the identification confrontation."  (Emphasis added.)

The controversy surrounding the wording of this instruction involves the trial court's use of the term "or" between each of the five factors.  
IPI Criminal 3d No. 3.15 on the evaluation of eyewitness identification testimony reads as follows:

"
3.15 Circumstances of Identification

When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[or]

[2] The witness's degree of attention at the time of the offense. 

          [or]
 
   
  

[3] The witness's earlier description of the offender.

[or]   

[4] The level of certainty shown by the witness when confronting the defendant.

[or]

[5] The length of time between the offense and the identification confrontation."  Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992).
(footnote: 1)
The committee note following IPI Criminal 3d No. 3.15 explains that the instruction was compiled from factors already well established by existing case law and cites to 
Manson v. Brathwaite
, 432 U.S. 98, 53 L. Ed. 2d 140,
 97 S. Ct. 2243 (1977), 
People v. Manion
, 67 Ill. 2d 564 (1977), and 
People v. Slim
, 127 Ill. 2d 302 (1989).  See Illinois Pattern Jury Instructions, Criminal, No. 3.15, Committee Note (3d ed. 1992).

Defendant argues that the jury instruction as worded misstates the law with respect to evaluating eyewitness testimony.  Defendant contends that the instruction reads as if the presence of evidence supporting only one of the five factors is a sufficient basis for the jury to determine the credibility of the identification testimony of the witnesses when case law clearly establishes that the "jury is to consider all the factors which are applicable to the evidence in the case."  Defendant explains that the Committee's use of "[or]" in between the five factors is "for the court to determine which factors apply to the evidence and should be considered by the jury."  Defendant further asserts that "[i]t is not for the jury to pick one factor which applies to the evidence."  Defendant concludes that considering the closeness of the evidence in this case, the instruction submitted to the jury should constitute reversible error.

The State responds that "the evidence was not close, the errors complained of do not rise to the level of serious injustice, and the alleged instructional error was utterly insignificant, as it neither misstated the law, nor affected the jury's ability to weigh the evidence."  The State further claims that the instruction "followed the text provided by the applicable jury instruction."  Therefore, the State concludes, defendant was not denied a fair trial.  We disagree.

All three cases cited by the Committee in its note to IPI Criminal 3d No. 3.15 discuss the five factors to be considered in evaluating witness identification testimony as enumerated by the United States Supreme Court in 
Neil v. Biggers
, 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382 
 (1972).  
In all of the cited cases, the five factors are listed in the following manner:

"(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; 
and
 (5) the length of time between the crime and the identification confrontation."  (Emphasis added).  
Slim
, 127 Ill. 2d at 307-08.
 

Manson
, 
432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253; 
Manion
, 67 Ill. 2d at 571-72. 
The cases clearly state that 
all
 five factors are to be considered and weighed in determining whether an  identification is reliable.  
Manson
, 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253; 
Manion
, 67 Ill. 2d at 571-72; 
Slim
, 127 Ill. 2d at 307-08.  The use of the word "and" in these cases demonstrates that the factors are not mutually exclusive (as the jury instruction submitted in this case suggests) but are all to be considered by the trier of fact in determining the reliability of the eyewitness identification testimony presented.
  

We agree with defendant that the purpose of the Committee's use of "[or]" between the factors listed in IPI Criminal 3d No. 3.15 is to inform the user that "only the particular * * * factors that are supported by the evidence should be given."  
People v. Lewis
, 165 Ill. 2d 305, 354 (1995).  The committee note to IPI Criminal 3d No. 3.15 instructs the user to only "[g]ive numbered paragraphs that are supported by the evidence."  Our interpretation of the Committee's use of "[or]" in IPI Criminal 3d No. 3.15 is supported by the "User's Guide" to the pattern jury instructions.  The User's Guide explains:

"IPI Fourth employs two conjunctive forms.  The word 'and' is used to indicate additional required language.  The word 'or' is used to separate possible alternatives.  
A bracketed 'or' ([or]') is used when the user must choose between alternative paragraphs or propositions that may be given as part of the instruction when more than one alternative is applicable
."  (Emphasis added.)

Illinois Pattern Jury Instructions, Criminal, User's Guide (4th ed. 2000).

The committee notes to IPI Criminal 3d No. 3.15 also refer the user to sample set 27.02 for an example of how to use IPI Criminal 3d No. 3.15.  A review of sample set 27.02 further supports our conclusion that the instruction given in this case was in error.  The example provided in sample set 27.02 does not place the term "or" between the factors listed in IPI Criminal No. 3.15, stating:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

The opportunity the witness had to view the offender at the time of the offense.

The witness's degree of attention at the time of the offense.

The witness's earlier description of the offender.

The level of certainty shown by the witness when confronting the defendant.

The length of time between the offense and the identification confrontation."  Illinois Pattern Jury Instructions, Criminal, Sample Set 27.02, No. 3.15 (4th ed. 2000).  

The trial court's incorporation of the term "or" between each factor implies, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability.  The phrase preceding the five factors, stating that "all facts and circumstances in evidence" are to be considered, does not obviate the erroneous wording of the jury instruction.  While an attorney may be able to resolve the court's instruction to "consider all the facts and circumstances in evidence" with its use of 
the term "or" between each factor, we doubt that an ordinary person acting as a juror could do the same.

The State asserts, however, that even if the jury instruction misstated the law, "any error was corrected by the prosecutor's exhaustive explanation of the elements of the instruction, and how the evidence adduced at trial satisfied each and every element."  The record reveals that this statement could not be further from the truth.  The assistant State's Attorney made the following statement concerning the identification instruction in closing argument:

"Now, your instruction won't have all this writing on it like my note taking, but basically I'd like to read it to you.  It says when you consider the identification testimony of a witness, you should [
sic
] all the facts and circumstances in evidence, including but not limited to the following: The opportunity the witness had to view the offender at the time of the offense, 
or – notice that 'or,'
 the witness' degree of attention at the time of the offense, 
or
 the witness' earlier description of the offender, 
or
 the level of certainty shown by the witness when confronting the defendant, 
or
 finally the length of time between the offense and the identification confrontation."  (Emphasis added.)

Contrary to the State's assertion, the prosecutor's comments served to reinforce the trial court's error by drawing the jury's attention to the use of the term "or" between each of the factors.  The prosecutor not only used the term "or" between each factor, but he specifically asked the jury to take note of it.  The error is further compounded by the mysterious omission of the term "weigh" in the prosecutor's recitation of the jury instruction.    

The fact that the prosecutor went on to argue how the evidence presented at trial satisfied each and every element listed in IPI Criminal 3d No. 3.15 is not dispositive
 of the issue before us.  What is dispositive is the fact that the erroneous jury instruction came from the trial court itself.  We are well aware that: (1) "[j]uries are presumed to follow the trial court's instructions" (
People v. Joyner
, 
317 Ill. App. 3d 93, 104 (2000)); (2) "arguments of counsel generally carry less weight with a jury than do instructions from the court" (
Boyde v. California
, 494 U.S. 370, 384, 110 S. Ct. 1190, 1200, 108 L. Ed. 2d 316, 331 (1990)); and (3) instructions from the court are typically "viewed as definitive and binding statements of the law."  
Boyde
, 494 U.S. at 384, 108 L. Ed. 2d at 331, 110 S. Ct. at 1200.  

Here, we have not only the trial court's improper instructions to the jury regarding evaluation of eyewitness identification testimony, but also the prosecutor's directive to the jury emphasizing the erroneous instruction in closing argument.  As previously stated, the evidence presented in this case was close.  Therefore, we cannot say that defendant's guilt was so clear and convincing as to render the trial court's error harmless beyond a reasonable doubt.  
Dennis
, 181 Ill. 2d at 96.  The instruction as given may have mistakenly led the jury to rely on but a single factor when deciding that the identification testimony presented was reliable.  We therefore hold that the trial court's error in jury instruction was not harmless, but prejudicial.  
Fierer
, 124 Ill. 2d at 187-88.   
 

We need not address the remaining issues defendant has raised on appeal.  For the foregoing reasons, 
defendant's convictions are reversed and the cause remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

McNULTY and TULLY, JJ., concur.

FOOTNOTES
1: Prior to 1992, the Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases (Committee) recommended that no instruction be given on circumstances of identification.  See Illinois Pattern Jury Instructions, Criminal, No. 3.15, Committee Note (2d ed. 1981).  Instead, the Committee directed the user to Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) and its committee note on the believability of witnesses.  In 1992, however, the Committee had a "change of mind" and inserted IPI Criminal 3d No. 3.15.  See Illinois Pattern Jury Instructions, Criminal, No. 3.15, Committee Note (3d ed. 1992).