THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON BRIONES, Defendant-Appellant.

Fifth District   No. 5—02—0821

Opinion filed September 30, 2004.—Rehearing denied October 27, 2004.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Peterson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Following a jury trial, the defendant, Brandon Briones, was convicted of criminal damage to property (720 ILCS 5/21—1(1)(a) (West 2002)) and sentenced to two years in prison. On appeal, the defendant argues that he was denied the effective assistance of counsel. We reverse and remand.

## FACTS

On May 30, 2002, the State charged the defendant by an amended information with criminal damage to property worth more than $300 (720 ILCS 5/21—1(1)(a), (2) (West 2002)) and aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(1) (West 2002)).

At the defendant's jury trial, the State presented the following evidence.

In the early morning hours of May 11, 2002, Darrel Moulton, with another man who stood in the darkness, knocked on the door of Michael Peyton and Darla Wynn's mobile home. When Michael opened the door, Darrel and Michael argued.

Darla was lying in bed where she could view the door. When Michael and Darrel moved away from the door, Darla recognized the defendant, her nephew, poking his head around Darrel to smile in the light. Michael, who had a vision problem and was not wearing his glasses, was unsure of the accompanying man's identity.

Michael shut the door but anticipated danger, so he began to dress. After five minutes, gunshots were fired at the mobile home. Darla and Michael exited the home and drove away in their truck. Darla and Michael recognized the defendant's voice when the defendant shouted that Darla and Michael were leaving.

Michael saw Darrel jump onto the back of the truck, after which the rear window on the truck's camper shell shattered. When she heard the window break, Darla saw the defendant standing on the rear bumper of the truck. After the window shattered, Michael stopped the truck and saw two men running down the road. When Darla shouted at the defendant, he stopped and turned. The defendant was not wearing a shirt.

Approximately seven minutes later, after Michael and Darla had driven to an unmanned police station, they returned to their residence. Their mobile home was on fire, the windows in their other two vehicles and in Darla's daughter's vehicle were broken, and police and fire personnel were on the scene. As a mechanic, Michael estimated that the cost to replace the windows exceeded $300.

Don Tate, Darla and Michael's neighbor, testified that on the night in question, he returned home after midnight and heard yelling, gunshots, and windows smashing. He entered his home, telephoned the police, and returned outside. Don saw Darrel and Brian Thompson enter the mobile home, saw a "big flash of light," and saw the two men run from the mobile home. Don also witnessed another male, wearing no shirt, running near the mobile home, but Don could not positively identify the man as the defendant.

In denying the defendant's motion for a directed verdict, the circuit court noted that the evidence was "not overwhelming."

During opening statements, the defendant's counsel stated:

"The evidence will show that [the defendant] gave a statement to Officer Squibb. He told Officer Squibb[:] [']I wasn't there. I was over here at Conrad and Tina Wynn's house.[']

* * *

[The defendant] has no obligation to testify. *** But he's going to get up here on this witness stand and he's going to testify and he's going to tell you the truth and he's going to subject himself to rigorous cross-examination by the State and he's going to do that because he's going to tell you the truth."

The defense called Darrel Moulton, who had pled guilty to residential arson with regard to the present case. Darrel testified that on the night in question, he approached Michael and Darla's mobile home with Avery Swarms, the defendant's cousin, not the defendant. Darrel testified that he and Avery had been drinking at Brian Thompson's house, that they approached Michael and Darla's mobile home, that Darrel argued with Michael, and that Brian Thompson shot at the mobile home. Darrel testified that when Michael and Darla attempted to leave, he and Avery chased them. Darrel testified that he broke Michael and Darla's truck window with a baseball bat and that Avery ran behind him.

Darrel testified that after he had broken Michael's truck window, he threw the baseball bat in a field, kicked in the front door of the mobile home, and ignited the home. Darrel testified that he then approached neighbors for a ride to town, including Conrad Wynn, whose window he approached for his request. Darrel then saw the defendant driving in his vehicle. Darrel asked the defendant for a ride, the defendant agreed, and the police later apprehended them together.

During cross-examination, Darrel admitted that in a handwritten statement, given to police on May 30, he stated:

"The last I saw of [the defendant] before he picked me up at the church was when I was in Brian's backyard and Darla and Mike were leaving. He picked up something and broke out their back window on their camper shell on the truck. That's when Brian's in the house getting another weapon."

Conrad and Tina Wynn, the defendant's brother and sister-in-law, lived near Darla and Michael. Conrad and Tina testified that at least 30 minutes before the fire started at Michael and Darla's home, the defendant arrived at the Wynn home and watched a movie with them. While the defendant was in their home, they heard pounding noises and saw the fire through their window. Before the defendant left their home, Darrel appeared at the window, and Conrad declined Darrel's request for a ride to town.

Conrad testified that approximately two weeks later, Avery admitted to him that the defendant was charged with crimes Avery had committed. Conrad testified that Avery and the defendant looked similar and that he sometimes confused the two.

Ramona Forbes, the defendant's mother, testified that Avery, who was her nephew, admitted to burning Michael and Darla's mobile home.

Avery Swarms testified that he lived two blocks from Darla and Michael's mobile home. Avery testified that on the night of the fire, he alternated between his home and William DeMain's home and that he witnessed the fire from across the street. Avery began walking toward the fire but returned home when he saw the fire and emergency vehicles. Avery denied involvement in the activities that damaged Michael and Darla's mobile home and vehicles. Avery also denied telling Conrad or the defendant's mother that the defendant was charged with crimes he had committed. Avery testified that he did not see Darrel, Brian, the defendant, Michael, or Darla that night.

William DeMain testified that on the night of the fire, Avery was at his home early in the evening and William fell asleep on his couch. When William woke, he stepped outside, saw the fire, and walked toward it. Heading that way, William encountered Avery, who was also walking toward the fire. The police and fire vehicles arrived thereafter.

The defendant did not testify.

During the State's rebuttal, the State recalled Officer Robert Squibb. Defense counsel objected to the State's questions to Officer Squibb regarding the defendant's postarrest statement. In his statement, the defendant asserted that on the night of the fire, he spoke with Chrystal Logsdon until approximately 10:45 p.m., went to his grandmother's to watch television, drove around, saw the fire, went to Conrad's home, and watched the fire. The court held the defendant's statements admissible as admissions by a party opponent, an exception to the hearsay rule.

The circuit court also stated:

> "You said yesterday in opening statements your client was going to testify, so I kind of anticipated that. *** I want to at least make a record on that."

In response to the circuit court's questioning, the defendant stated that it was his decision, along with his counsel's, that he not testify.

During the jury instruction conference, defense counsel tendered a jury instruction regarding the weight to be given identification testimony (Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000)). The circuit court suggested including "or" between each element, the State agreed, and defense counsel withdrew the proposed instruction, which had omitted the word "or." As a result, the jury was instructed as follows:

> "When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

The opportunity the witness had to view the offender at the time of the offense, or

The witness's degree of attention at the time of the offense, or

The level of certainty shown by the witness when confronting the defendant, or

The length of time between the offense and the identification confrontation."

The jury found the defendant guilty of criminal damage to property over $300 but not guilty of aggravated discharge of a firearm. On December 5, 2002, the circuit court sentenced the defendant to two years in prison. The defendant filed a timely notice of appeal.

## ANALYSIS

Pursuant to both the United States Constitution (U.S. Const., amend. VI) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8), an accused has a due process right to the effective assistance of counsel in a criminal prosecution. *People v. Connor*, 82 Ill. App. 3d 652, 657 (1980). A defendant raising an ineffective-assistance-of-counsel claim must meet the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance was so seriously deficient that it fell below an objective standard of reasonableness under prevailing professional norms, that is, counsel made errors so serious that he no longer functioned as the "counsel" guaranteed by the sixth amendment. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *Albanese*, 104 Ill. 2d at 525. To establish deficiency, the defendant must overcome the strong presumption that counsel's challenged action or inaction was the product of sound trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

The defendant must also show that his counsel's deficient performance so prejudiced him that it denied him a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *Albanese*, 104 Ill. 2d at 525. To show prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Albanese*, 104 Ill. 2d at 525.

"[A] defendant is entitled to a fair trial, not a perfect one." *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Likewise, the right to the effective assistance of counsel refers to competent, not perfect, representation. *Easley*, 192 Ill. 2d at 344; *People v. Stewart*, 104 Ill. 2d 463, 492

(1984). Only the most egregious of tactical or strategic blunders may provide a basis for a violation of a defendant's right to the effective assistance of counsel (*People v. Kubik*, 214 Ill. App. 3d 649, 661 (1991)), such as when trial counsel's chosen strategy was so unsound that counsel completely failed to conduct any meaningful adversarial testing (*People v. Reid*, 179 Ill. 2d 297, 310 (1997)).

The defendant argues that his counsel was deficient because she set the defense up to be discredited by promising the jury that the defendant would testify to the truth and, inexplicably, failing to call him. We agree.

In *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003), contrary to trial counsel's promise to the jury in opening statements, the defendant did not testify. The federal appellate court held, "[W]hen the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for 'little is more damaging than to fail to produce important evidence that had been promised in an opening.' " *Leibach*, 347 F.3d at 257, quoting *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988). The court continued:

> "Promising a particular type of testimony creates an expectation in the minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the testimony would have been adverse to his client and may also question the attorney's credibility. In no sense does it serve the defendant's interests." *Leibach*, 347 F.3d at 259.

Similarly, in *Ouber v. Guarino*, the federal appellate court stated:

> "When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made." *Ouber v. Guarino*, 293 F.3d 19, 28 (1st Cir. 2002).

See also *People v. Patterson*, 192 Ill. 2d 93, 121 (2000) (the defendant was entitled to a postconviction evidentiary hearing involving an ineffective-assistance claim because defense counsel failed to produce evidence he had promised in opening statements); *People v. Lewis*, 240 Ill. App. 3d 463, 468 (1992) (defense counsel was incompetent for promising, during opening statements, to produce the defendant's pretrial exonerating statement when the statement was actually inadmissible hearsay); *People v. Chandler*, 129 Ill. 2d 233, 249 (1989) (defense counsel failed to subject the prosecution's case to meaningful adversarial testing, in part because counsel failed to call the defendant to testify, despite his opening statement to the contrary).

In *People v. Manning*, contrary to defense counsel's promise during opening statements, the defendant informed the trial court that he did not want to testify. *People v. Manning*, 334 Ill. App. 3d 882, 892 (2002). The appellate court stated that because it could not determine from the record whether counsel's decision was based upon the defendant's choice not to testify, sound trial strategy, or incompetence, the court presumed it was the result of trial strategy and rejected the defendant's ineffective-assistance-of-counsel claim. *Manning*, 334 Ill. App. 3d at 893.

We agree with *Manning* that if the defendant, contrary to defense counsel's previous assertion, decided not to testify at the trial, his counsel's performance was not deficient. However, we decline to presume that defense counsel's decision not to present the defendant's testimony, after promising to do so in opening statements, was the result of trial strategy.

Although the defendant must overcome the strong presumption that his counsel's challenged action or inaction was the product of sound trial strategy (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065), once defense counsel promised the jury that the defendant would tell the truth from his own lips and then counsel reneged on that promise, in no sense could it serve the defendant's interests (see *Leibach*, 347 F.2d at 259). When defense counsel promised the jury in opening statements that the defendant would testify but counsel later determined that the promise would go unfulfilled, it was counsel's responsibility to evidence in the record that she was not deficient, *i.e.*, that the determination was a result of the defendant's fickleness or of counsel's sound trial strategy due to unexpected events. Because defense counsel in the case *sub judice* failed to show in the record that the defendant inexplicably changed his decision to testify or that, because of unexpected events, sound trial strategy required her to break her promise that the defendant would testify, we find that counsel's performance, in failing to present the defendant's testimony that she had promised in opening statements, was deficient.

The defendant also argues that his trial counsel was ineffective for allowing the jury to be improperly instructed regarding the weight to be given the identification testimony of Darla and Michael. We agree.

In *People v. Gonzalez*, the trial court had instructed the jury as follows:

> " 'When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including but not limited to the following:
>
> The opportunity the witness had to view the offender at the time of the offense; *or*

The witness'[s] degree of attention at the time of the offense; *or*
The witness'[s] earlier description of the offender; *or*
The level of certainty shown by the witness when confronting the defendant; *or*
The length of time between the offense and the identification confrontation.' (Emphasis added.)" *People v. Gonzalez*, 326 Ill. App. 3d 629, 637 (2001).

In *Gonzalez*, as in the present case, the controversy surrounding the wording of the instruction involved the trial court's use of the word "or" between each of the five factors. *Gonzalez*, 326 Ill. App. 3d at 637. The Illinois pattern instruction states the following:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

■ The opportunity the witness had to view the offender at the time of the offense.

[or]

■ The witness's degree of attention at the time of the offense.

[or]

■ The witness's earlier description of the offender.

[or]

■ The level of certainty shown by the witness when confronting the defendant.

[or]

■ The length of time between the offense and the identification confrontation." Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000).

The appellate court in *Gonzalez* held that the incorporation of the word "or" between each factor incorrectly implied, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors weighs in favor of reliability. *Gonzalez*, 326 Ill. App. 3d at 640. The appellate court held that the trial court's error in so instructing the jury was improper and prejudicial. *Gonzalez*, 326 Ill. App. 3d at 641.

Similarly, in the present case, the circuit court erred in including the word "or" between the factors the jury was to consider in evaluating the eyewitness identification testimony. Although defense counsel submitted a proper instruction, she accepted the court's suggestion that her instruction was in error and withdrew it. Defense counsel was deficient in failing to cite *Gonzalez* to support the correct, proposed jury instruction and in withdrawing it.

The defendant also cites the following tactical or strategic errors by his counsel: (1) his counsel allowed into evidence his statement to Officer Squibb when the statement was inconsistent with the defense,

*i.e.*, in the statement, the defendant claimed that he did not arrive at his brother's home until after the fire had started, (2) his counsel called Avery Swarms as a witness even though counsel knew that Avery would not admit his culpability for the crimes, (3) his counsel failed to request that Darrel Moulton's oral statements to Officer Squibb be limited as impeachment evidence, (4) his counsel called Darrel to testify for the defense when Darrel's testimony allowed the State to show on cross-examination that Darrel had previously lied to the police and that Darrel had previously told the police that the defendant had accompanied him during the crime, and (5) his counsel provided alibi testimony that was impeached with the defendant's prior inconsistent statement.

Such tactical or strategic errors by counsel cannot support a claim of ineffective assistance of counsel unless trial counsel's chosen strategy was so unsound that counsel completely failed to conduct any meaningful adversarial testing. See *Reid*, 179 Ill. 2d at 310. Although we find that counsel's strategy was not so unsound that counsel completely failed to conduct any meaningful adversarial testing, trial counsel's strategy was refutable, and in conjunction with trial counsel's errors in failing to present promised testimony by the defendant and in allowing the jury to be misinstructed, we find that the defendant was prejudiced.

The prosecution's case primarily involved the testimony of Michael and Darla and their opportunity to identify their assailants under low light and while fleeing from their home. At the conclusion of the State's case, the circuit court noted that the evidence against the defendant was not overwhelming. From our review of the proceedings as a whole, considering the aggregate errors of defense counsel, we find that the verdict cannot be relied upon with confidence. See *People v. Moore*, 279 Ill. App. 3d 152, 162 (1996) ("[t]he question is not whether the defendant would more likely than not have received a different result without the professional errors of counsel but whether, with their presence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"). We hold that the defendant was denied his right to the effective assistance of counsel.

On the other hand, although not overwhelming, the evidence against the defendant was sufficient to prove him guilty beyond a reasonable doubt. We therefore find no double jeopardy impediment to a new trial. See *People v. Fornear*, 176 Ill. 2d 523, 535 (1997).

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Marion County is reversed, and the cause is remanded for a new trial.

Reversed; cause remanded.

CHAPMAN, P.J., and KUEHN, J., concur.