Memorandum

  THIRD DIVISION

September 25, 2002

No. 1-00-3046

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )               

)

HECTOR MERCADO,   ) Honorable

) James D. Egan,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

In general, the Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases takes the position that an instruction on particular types of evidence should not be given unless some special guidance from the judge would be useful.  Committee Note to Illinois Pattern Instruction (IPI) Criminal No. 3.15.  An exception is made when identification is an issue for the jury.  Then, the jury is told to consider specific circumstances of identification.  This case concerns use of the word "or" between each of the circumstances contained in the instruction.

Following a jury trial, defendant Hector Mercado was convicted of first degree murder, armed robbery, and home invasion, and sentenced to 92 years in prison for murder and concurrent sentences of 30 years each for the other two offenses.
(footnote: 1)  Defendant appeals his convictions, contending: (1) the trial court misstated the law in its instruction to the jury with respect to evaluating eyewitness identification testimony; (2) the trial court erred in admitting into evidence gruesome photographs which lacked probative value; (3) his extended-term sentence was unconstitutional under the holding of 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); and (4) the trial court erred in factoring the age of the deceased into its sentencing determination.  We affirm.

FACTS

The State's evidence established defendant and co-defendant Audrey Ann Klimawicze lived in the third-floor apartment directly above the apartment where co-defendant's mother, Audrey Virginia Klimawicze, lived.  On the night of July 31, 1997, they broke into Klimawicze's apartment and killed her by stabbing and strangling her.  They took money from the apartment and used it to buy drugs.  They later attempted to dispose of the victim's body by placing it in a garbage can in the alley and setting the can on fire. 

At trial, Bonnie Gentile, co-defendant's stepsister and the victim's daughter, testified that she returned home from the weekend on August 2, 1997, and found her mother's apartment in disarray.  The back door was ajar, all the white dish rags were missing from the kitchen, and birthday and Christmas cards where her mother kept money were strewn about on the floor.  

Joseph Gioia, the victim's neighbor, testified that on the morning of August 2, 1997, he saw a smoldering garbage can in the alley and later saw flames coming out.  He called 911, and the firemen put out the fire.  The next morning, Gioia observed a human foot and part of a leg in the garbage can.  Gioia identified People's Exhibit No. 26 as a photograph of the body that he saw in the garbage can.  Constance Cook, another neighbor, testified that on August 1, 1997, she was standing on her back porch and saw defendant pushing a heavy garbage can down the alley.  She later gave a description of defendant to the police and identified defendant in a lineup at the police station.     

Chicago Police Detective Joseph Danzl testified that on August 2, 1997, he arrived in the alley in response to Gioia's 911 call and saw an unidentified woman's buttocks, legs, and burned feet sticking out of a partially burned garbage can.  The victim's head was wrapped in a white towel, and a green rug was inside the can.  Detective Danzl identified People's Exhibit No. 26 as a photograph depicting the victim's body in the garbage can.  He identified People's Exhibit No. 38 as a photograph depicting the victim's remains, a green rug, part of the garbage can, and some garbage.  He also identified People's Exhibit No. 39 as a photograph depicting a close-up of the victim's face.  The photos in exhibits 38 and 39 were taken at the morgue.  

Detective Robert Lenihan testified that he saw defendants walking down the street on August 2, 1997, and asked them to identify a photograph of the victim.  Both defendants denied that they recognized the person.  

Dr. Joseph Cogan, a medical examiner, testified that he performed an autopsy on the victim, and he determined the cause of death was multiple injuries, including multiple stab wounds, slash wounds, blunt force injury, and strangulation.  The burns on the victim's body were sustained post-mortem.  

Police Officer Thomas Ginnelly processed the victim's apartment and found blood samples determined to be consistent with the victim's DNA and fingerprints on the kitchen table determined to be those of co-defendant.  

On August 3, 1997, defendant made several statements to police.  He first denied any knowledge of the victim's death. Then, he said when he returned home from work on July 31, co-defendant told him she had fought with and stabbed her mother and gotten a homeless man to put her body in the garbage.  Defendant said he moved the garbage can down the alley but denied setting it on fire.  Defendant later repeated the story, then gave a third account of what happened.  He said on July 31, co-defendant was talking about killing her mother.  They went to her mother's apartment.  Defendant saw co-defendant kick the victim and stab her several times.  They then took money from the apartment and went to buy heroin.  The next day, they put the victim's body into a garbage can.  Defendant denied setting it on fire.  

Defendant's final statement to police was memorialized into a handwritten statement, signed by defendant, and published at trial.  In that statement, defendant said co-defendant asked him to help her kill her mother.  Co-defendant grabbed a long black cord and went downstairs to her mother's apartment.  Defendant followed.  He saw co-defendant arguing with her mother.  Co-defendant then kicked the victim and forced her into the apartment.  Co-defendant wrapped the black cord around the victim's neck and choked her.  She told defendant to stab the victim.  Defendant said, "I'm sorry, lady," and stabbed the victim three times with his hunting knife.  They took money from the apartment and left to buy heroin and cocaine.  When they returned, the victim was still gasping and bleeding on the floor.  Defendant put the knife, cord, and other items into a plastic bag and threw them in a dumpster.  The next day, they placed the victim's body and the rug she had been lying on inside a garbage can and pushed it into the alley.  Late that night, they poured terpentine over the can and lit it on fire.  

Joe Martinez, a cabdriver, testified for the defense.  He said he picked up both defendants and co-defendant's daughter on August 2, 1997.  In the cab, co-defendant stated she had stabbed her mother and said, "Hector came through for me real good."  Defendant said "the bitch deserved it," and "that's all right, they can't prove anything."  Defendant testified on his own behalf and denied any participation in the murder.  He said co-defendant told him she killed her mother, but he did not believe her.  He denied ever reading the handwritten statement memorializing his confession.     

During the jury instructions conference, the State requested the jury be given an instruction on the factors to consider in weighing identification testimony, Illinois Pattern Instruction (IPI) Criminal No. 3.15, submitted as State's Instruction No. 11.  The judge read the instruction to the jury, including the connector "or" between the five factors to be considered.  The instruction reads:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[or]

[2] The witness's degree of attention at the time of the offense.

[or]

[3] The witness's earlier description of the offender.

[or]

[4] The level of certainty shown by the witness when confronting the defendant.

[or]

[5] The length of time between the offense and the identification confrontation."  Illinois Pattern Jury Instructions, Criminal,  No. 3.15 (3d ed. 1992) (hereinafter IPI Criminal 3d).   

Defense counsel did not object to the instruction being given.

After closing arguments and deliberations, the jury found defendant guilty of first degree murder, home invasion, and aggravated robbery.  The trial court determined defendant was eligible for the death penalty.  At sentencing, the court declined to impose the death penalty but found defendant qualified for an extended-term sentence based on the brutal and heinous nature of defendant's conduct.  730 ILCS 5/5-5-3.2(b)(2) (West 2000).  

Defendant was sentenced to 92 years' imprisonment for first degree murder and concurrent sentences of 30 years each for home invasion and aggravated robbery.  In sentencing defendant, the trial judge said, "I was looking at the age of [the victim] figuring that in some way.  But I don't believe 62 years is enough at this point.  I believe a sentence as to the murder charge would be 92 years as to both of you.  As to the armed robbery and home invasion, there will be a concurrent term of 30 years each."      

DECISION

I. JURY INSTRUCTION

Defendant first contends the trial court misstated the law in its instruction to the jury regarding evaluating eyewitness opinion testimony.  One of the instructions given to the jury, submitted as State's Instruction No. 11, differed from IPI Criminal 3d No. 3.15 in that it included the connector "or" in between the five factors to be considered.  However, the first sentence of the instruction as well as all of the applicable cases clearly state that 
all
 five factors are to be considered and are not mutually exclusive.   
People v. Gonzalez
, 326 Ill. App. 3d 629, 638-39, 761 N.E.2d 198 (2001).  

The Committee Note attached to IPI Criminal 3d No. 3.15 instructs the user to only "give numbered paragraphs that are supported by the evidence," and "[t]he bracketed numbers are present solely for the guidance of court and counsel and should not be included in the instruction submitted to the jury."  We agree with defendant that the word "or" placed in brackets was also designed solely for the guidance of the court and counsel and not to be included in the instruction to the jury.  Defendant contends the instruction as given is contradictory, confusing, and misstates the law, because it instructs the jury to consider all of the factors and then tells the jury it need only consider any one of the factors.

Defendant's failure to object to this instruction at trial or raise the issue in a post trial motion amounts to a waiver of the issue.  Even if the issue is not waived, we find the error in the jury instruction was harmless in light of the evidence presented at trial in favor of conviction.  A jury instruction error is harmless if the result of the trial would not have been different if a proper instruction had been given.  
People v. Kirchner
, 194 Ill. 2d 502, 557, 743 N.E.2d 94 (2000).  Based on the record, we find that any error in the jury instructions was harmless beyond a reasonable doubt.   

Defendant relies on 
Gonzalez
, 326 Ill. App. 3d at 635, where this court, in considering this issue, held the jury instruction misstated the law and denied the defendant a fair trial.  The 
Gonzalez
 court further found the evidence was "closely balanced," as the State's case was based entirely on circumstantial evidence through identification testimony of two witnesses.  
Gonzalez
, 326 Ill. App. 3d at 635.  

This case is distinguishable, as the evidence was not "closely balanced," but was overwhelmingly in favor of conviction.  At trial, the State introduced into evidence the eyewitness testimony of Constance Cook, who saw defendant pushing a "very heavy" garbage can down the alley the day after the murder.  Most damaging was defendant's signed confession describing in detail how he and co-defendant killed the victim and disposed of the body.  His statement was corroborated by the physical evidence.    

The court in 
Gonzalez
 also noted comments by the prosecutor to the jury reinforced the trial court's error by specifically drawing the jury's attention to the use of the term "or" between each of the factors.  
Gonzalez
, 326 Ill. App. 3d at 640-41.  In this case, the prosecutor correctly argued to the jury in closing that they were to consider all five of the factors in evaluating eyewitness testimony.  Unlike 
Gonzalez
, the evidence in this case was not closely balanced, and the prosecutor correctly explained the instruction.  We find the outcome of the case would not have been different had the jury been given a proper instruction.     

II. ADMISSION OF PHOTOGRAPHS   

Defendant next contends the trial court's admission into evidence of photographs of the victim's face and charred body deprived him of a fair trial because they lacked probative value and inflamed the jury against defendant.  Specifically defendant objects to People's Exhibit No. 26, showing the garbage can in the alley with the victim's legs and feet sticking out, No. 38, showing the state of the victim's body as it appeared in the medical examiner's office, and No. 39, showing a close-up of the victim's face.

The decision to admit photographs into evidence is within the discretion of the trial court, and the court's decision will not be overturned absent an abuse of that discretion.  
People v. Rissley
, 165 Ill. 2d 364, 403, 651 N.E.2d 133 (1995).  If the photographic evidence is relevant to prove facts at issue, it is admissible and can be shown to the jury, so long as it is not so inflammatory or prejudicial that it substantially outweighs its probative value.  
People v. Benford
, 295 Ill. App. 3d 695, 698, 692 N.E.2d 1285 (1998).
  Such photographs are admissible despite the fact they may be gruesome or inflammatory or even "disgusting."  
Rissley
, 165 Ill. 2d at 405.  

Photographs of a decedent may be admitted to prove, among other things, the nature and extent of injuries and the force needed to inflict them; the position, condition, and location of the body; the manner and cause of death; to corroborate a defendant's confession; and to aid in understanding the testimony of a pathologist or other witness.  
People v. Henderson
, 142 Ill. 2d 258, 319, 568 N.E.2d 1234 (1990); 
People v. Nyberg
, 275 Ill. App. 3d 570, 584, 656 N.E.2d 65 (1995).  While the photographs may be cumulative of the testimony of a witness who described the condition and location of the body, they also may aid jurors in understanding this testimony.  
People v. Jones
, 236 Ill. App. 3d 244, 249, 603 N.E.2d 619 (1992).

We agree with the State that the photographs to which defendant objects were relevant to show the position, condition, and location of the victim's body, and to corroborate the testimony of Dr. Cogan, Bonnie Gentile, and Joseph Gioia.  Not only do they depict the victim's remains, but they also show the white towels and green rug disposed of with the body.  Additionally, they corroborate the details of defendant's confession.  We see no abuse of discretion in the court's decision to admit them or to allow the jury to see them, although we see little value and some detriment in the jury having People's Exhibit No. 39.   
 

III. 
APPRENDI

Next, defendant contends section 5-5-3.2(b)(2) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(2) (West 2000)), which provides for extended-term sentencing based on a finding of brutal and heinous conduct by defendant, is unconstitutional pursuant to 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  

Defendant contends that, under 
Apprendi
, his extended-term sentence violated his rights to due process of law and trial by jury because it subjected him to an increased penalty without requiring notice in the charging instrument or a jury finding that he qualified for the sentence beyond a reasonable doubt.  In 
Apprendi
, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  

The exact issues raised by defendant were recently rejected by our supreme court in 
People v. Ford
, 198 Ill. 2d 68, 761 N.E.2d 735 (2001).  In 
Ford
, the trial court found the defendant eligible for the death penalty but instead imposed an extended-term sentence of 100 years based upon its finding that the murder was accompanied by brutal or heinous behavior indicative of wanton cruelty.  The supreme court noted that after defendant was found eligible for the death penalty, death was the prescribed statutory maximum sentence.  
Ford
, 198 Ill. 2d at 73-74.  Therefore, because the maximum sentence was death and the sentence actually imposed was 100 years, the extended-term sentence clearly complied with the rule announced in 
Apprendi
.  
Ford
, 198 Ill. 2d at 73.  We follow  
Ford
 and reject defendant's argument.  In this case, defendant was found eligible for the death penalty.  Defendant's 92-year extended-term sentence for first degree murder complies with 
Apprendi
 because it does not increase the penalty beyond the prescribed statutory maximum.

IV. SENTENCING FACTORS

Finally, defendant contends he was deprived of a fair sentencing hearing where the trial court factored the age of the victim into its determination, although that factor does not reflect the seriousness of the offense or his rehabilitative potential.  He contends the court explicitly relied upon an improper factor at sentencing by adding 30 years to 62, the age of the deceased, in order to arrive at the imposed 92-year sentence.  Defendant argued in a post-sentencing motion that his sentence was excessive, but he failed to claim the court used an improper factor in aggravation.  This issue is waived on appeal.  See 
People v. Reed
, 177 Ill. 2d 389, 393-94, 686 N.E.2d 584 (1997).  

Defendant acknowledges he failed to preserve this issue for appeal; however, he contends we should apply the plain error doctrine in reviewing his sentence.  The plain error rule allows for appellate review in criminal cases even though a defendant has not properly preserved an error for review, where the evidence is closely balanced or where the error adversely affected the defendant's right to a fair trial.  
People v. Mullen
, 141 Ill. 2d 394, 401-02, 566 N.E.2d 222 (1990).  This case fits neither category.  We will not consider the issue.  

CONCLUSION

We affirm the decision and rulings of the trial court.

Affirmed.

SOUTH, P.J., and HOFFMAN, J., concur.

FOOTNOTES
1:
Defendant and co-defendant Audrey Ann Klimawicze were tried by simultaneous but separate juries.  Both were found guilty of first degree murder, armed robbery, and home invasion, and both received the same sentences.