THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) No. 98 C4 40765

)

NATALE SARACENO, ) Honorable

) Frank DeBoni,

Defendant-Appellant. ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, the defendant, Natale Saraceno, was found guilty of one count of residential burglary and as a result of his criminal background, he was sentenced as a Class X offender to serve 20 years' imprisonment.  The issues Saraceno raises on appeal are whether: (1) the trial court improperly stated Illinois Pattern Jury Instruction, Criminal No. 3.15 (4th ed. 2000 (hereinafter IPI Criminal)) when it was submitted to the jury; (2) the trial court improperly restricted the testimony of witnesses; (3) the State made improper remarks during its closing argument; (4) the trial court erred when it refused to consider Saraceno's 
pro
 
se
 motion for a new trial which alleged ineffective assistance of counsel; and  (5) the mandatory Class X sentencing provision of section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2000)) violates 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  For the reasons that follow, we reverse the decision of the trial court and remand this cause for a new trial.

BACKGROUND

At trial, Beverly Verner testified that on May 4, 1998, she lived in Berwyn, Illinois, with her father.  At the time, Verner said that her next-door neighbor was having his roof replaced and that there were workmen on his roof.  The neighbor's house was located on the western side of Verner's home.

At approximately 1:30 p.m., Verner was in her bedroom lying down watching television when someone rang her front doorbell. The door to her bedroom was closed and she was the only person in the house.  Verner testified that she did not answer the door because she was not feeling well and she was not expecting visitors.

After the front doorbell stopped ringing, the back doorbell began to ring.  Again, Verner did nothing.  After the back bell stopped, the front doorbell began ringing again.  Verner did not answer the door.  Next, the front doorbell stopped ringing, and the backdoor bell began ringing again.  Verner still did not answer the door.

Verner testified that at approximately 1:50 p.m. she heard "creeping" in the house.  Verner said that she has hardwood floors and she could hear someone walking slowly in the house.  Verner testified that she heard someone walk from the kitchen through various rooms in the house.  Verner testified that the noise was not familiar to her.  She explained that when her father walked through the house it made a different sound.  Verner picked up her telephone and dialed 91 and sat in her bed waiting to dial the last number to 911.

Verner then saw her bedroom doorknob turn slowly.  When she saw a gloved hand opening the door, she completed dialing the last number to 911.  Verner described the gloves as big rugged, gray gloves.

When her bedroom door opened, Verner saw a man standing in the doorway.  He was approximately three feet from where she was sitting on her bed.  Verner said that she could see the man's face and that she in fact focused on his face.  She identified the man as Saraceno.

Verner then yelled and said "who are you and what are you doing here?"  She then proceeded to tell the 911 operator that she had a home invader.  The intruder then shut her door.  After speaking to the 911 operator, Verner telephoned her father but was unable to contact him.  She then called and spoke to her brother.

Verner testified that while she was on the phone trying to contact her father and brother, she could still hear the intruder walking around her house.  After speaking to her brother, Verner said, she walked to the window and waited until she heard the police outside.  She testified that it took the police approximately two minutes to arrive.

When the police arrived, Verner explained to them what happened and gave them a description of the intruder.  She testified that she told the police that the intruder was Hispanic, with deep-set eyes, and that he was wearing a baseball hat and a T-shirt.  Verner also testified that she thought that she noticed a tattoo on the intruder's arm, although she could not remember if she conveyed this information to the police officers.  The police officer with whom she was speaking relayed the description over the radio.

Approximately a minute later, she was asked to walk over to her window and look outside.  When Verner looked out of her window, she saw Saraceno standing between two officers.  She informed the officers that he was the man who had entered her home.  After identifying Saraceno, Verner said that she went outside on the porch to take one last look at Saraceno out of curiosity.  Verner testified that when she saw Saraceno she said "that's him."  Verner said that she also looked at the other men who were working on her neighbor's roof and that none of them resembled the man who entered her home.

Verner was then taken to the back of her house to its rear entrance.  There she saw damage to the back door.  The door had been jimmied opened.  Later that afternoon, at approximately 3:30 p.m., Verner was exiting the rear of her house where she saw tools on the ground.  In particular, she saw "a long rod iron, like a hook," and a pair of gloves that were similar to those that were worn by the man who had entered her apartment.  She said the gloves were lying on the ground approximately seven feet from her backdoor.

Detective Becvar testified that on May 4, 1998, at approximately 1:50 p.m. he was on duty and received an assignment concerning an intruder.  When he arrived at Verner's apartment, he observed damage to her rear door.  Becvar said that there were chips around the doorknob and he could see that the doorjamb had been pried.  However, he did not see a pry bar or work gloves near the rear entrance.  Becvar met with Officer Haennicke and Verner.  Verner described the intruder as being "a male Hispanic wearing a black baseball cap, tee-shirt with deep set eyes."  Officer Haennicke radioed the description to the other units.  

Approximately 30 seconds later, Sergeant David Ehle  responded by radioing that he had an offender who matched the description.  Based on that transmission, Becvar had Verner approach the front window of her apartment.  Becvar testified that Verner "instantly said, that's him."   

Ehle testified that on May 4, 1998, he was working with Sergeant Ken Zolecke.  At approximately 1:50 p.m., they received an assignment concerning a home invasion and proceeded to Verner's apartment.  As they were en route, they received a radio transmission of the description of the intruder.  Ehle testified that the description was of a "male Hispanic with a tee-shirt and deep set eyes." 

After arriving, Ehle observed a Hispanic male walking toward a vehicle parked on the street, approximately four houses away from Verner's residence.  As Ehle approached the man and called to him, Ehle noticed that the man also had deep set eyes.  Sergeant Ehle testified that Saraceno was wearing a white T-shirt, but he was not wearing a black baseball cap nor was one ever recovered.  Ehle asked the man to accompany him back to Verner's residence.  Ehle then radioed Officer Haennicke and told him that he was bringing the subject back to Verner's house.

After standing in front of Verner's home with Saraceno, Ehle received a radio communication from Detective Becvar, who said that Verner had identified the man as the intruder.  Ehle then took Saraceno into custody.

Stephen McCord, called by the defendant as a witness, testified that he was working for Trent Roofing on May 4, 1998.  McCord was the foreman on the roofing job that was located next door to Verner's home.  McCord testified that he had known Saraceno for approximately five to six years.  McCord said that there were nine members on his work crew that day, including Saraceno.  Saraceno arrived at work at 7 a.m.  McCord testified that Saraceno was wearing a white T-shirt but that Saraceno did not wear a hat that day.  

McCord testified that from noon until Saraceno left the worksite, Saraceno was on the roof working.  When Saraceno left the roof, McCord saw him leave his tools on the roof, climb down the ladder, use a hose to wash off and walk toward his car.  McCord saw Saraceno get into his car and start it after several attempts.  At this point, the police arrived and ordered everyone off the roof.  The police were asking the workers questions. McCord then saw Saraceno come back "to see what was going on."  One of the officers pulled Saraceno aside and shortly thereafter, Saraceno was placed under arrest.

The jury found Saraceno guilty of one count of residential burglary and he was sentenced to serve 20 years' imprisonment.  On February 4, 2000, Saraceno timely filed a notice of appeal.

ANALYSIS

Saraceno contends the trial court submitted an erroneous jury instruction with respect to the evaluation of eyewitness testimony.  Saraceno maintains the trial court misstated the law when it submitted its version of IPI Criminal 4th No. 3.15 to the jury.  Specifically, Saraceno argues that the trial court erred because when it submitted the instruction it erroneously contained the word "or" instead of the word "and" between the factors to be considered by the jury.  Saraceno asserts he was denied a fair trial because the jury instruction on identification was contradictory, confusing and misstated the law.  We agree.

The State initially argues that Saraceno has waived this issue because he failed to raise it in his posttrial motions.  Generally, a defendant waives any error contained in the jury instructions if he does not object or proffer alternative instructions at trial and fails to raise the issue in a posttrial motion.  
People v. Reddick
, 123 Ill. 2d 184, 198 (1988), citing 
People v. Thurman
, 104 Ill. 2d 326 (1984).  Saraceno responds by arguing that this issue should be reviewed under the plain error rule.

The plain error rule allows a reviewing court to consider 

issues waived for purposes of review where the evidence at trial 

was closely balanced or the alleged error was so prejudicial that it denied the defendant a fair trial.  
People v. Nieves
, 192 Ill. 2d 487, 502-03 (2000), citing 
People v. Vargas
, 174 Ill. 2d 355, 363 (1996).  "'Plain error marked by "fundamental [un]fairness" occurs only in situations which "reveal breakdowns in the adversary system," as distinguished from "typical trial mistakes."  [Citation.]'"  
People v. Gonzalez
, 326 Ill. App. 3d 629, 635 (2001), quoting 
People v. Keene
, 169 Ill. 2d 1, 17 (1995).  "For this court to review an issue under the plain error doctrine, 'the asserted error must be something "fundamental to the integrity of the judicial process."  [Citation.]'"  Gonzalez, 326 Ill. App. 3d at 635, quoting 
Keene
, 169 Ill. 2d at 17.

Here, the plain error doctrine applies because the evidence was closely balanced and the jury instruction at issue misstated the law.  The State's case was based solely on the identification testimony of Verner.  Verner, who was in a heightened emotional state when the break-in occurred, testified that the intruder was wearing a black baseball cap.  However, when Saraceno was arrested, he was not wearing a baseball cap and one was never found near the scene of the crime.  Also, when Verner initially identified the defendant as the intruder, she was not given any alternative suspects from which to choose.  Saraceno was standing alone in between two police officers.

Saraceno's foreman, McCord, provided the defendant with an alibi.  McCord testified that Saraceno was on the roof working when the intrusion occurred (as opposed to Saraceno's brother, who was working on the ground).  McCord also testified that Saraceno left his tools on the roof when he finished working, which potentially negates the implication that the tools that were later found by Verner were the defendants.

We now address the merits of Saraceno's argument under Supreme Court Rule 615(a)(134 Ill. 2d R. 615(a)) which reads in pertinent part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  "'It is well settled that a defendant's claim of improper jury instructions is reviewed under a harmless-error analysis.'"  
Gonzalez
, 326 Ill. App. 3d at 636, quoting 
People v. Amaya
, 321 Ill. App. 3d 923, 929 (2001).  Error arising from the tendering of jury instructions is deemed harmless only if the submission of proper instructions to the jury would not have yielded a different result.  
People v. Shaw
, 186 Ill. 2d 301, 323 (1999).

Our supreme court has outlined a two-part test for the application of the harmless error analysis.  First, we are to determine "whether any error occurred--in other words, whether the instruction was correct."  
People v. Dennis
, 181 Ill. 2d 87, 95-96 (1998).  Second, if we find an error in the jury instruction, then we must determine "whether, in spite of that error, evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt." 
Dennis
, 181 Ill. 2d at 96.

IPI Criminal 4th No. 3.15 reads as follows:

"
3.15
 
Circumstances of Identification

When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[or]

[2] The witness's degree of attention at the time of the offense.

[or]

[3] The witness's earlier description of the offender.

[or]

[4] The level of certainty shown by the witness when confronting the defendant.

[or]

[5] The length of time between the offense and the identification confrontation."  Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th
 ed. 2000).

The actual instruction that the trial court gave the jury follows:

"When you weigh the identification testimony of [the] witness, you should consider all the facts and circumstances in evidence, including, but not limited to the following:

The opportunity the witness had to view the offender at the time of the offense; or, the witness's degree of attention at the time of the offense; or, the witness's earlier description of the offender; or, the level of certainty shown by the witness when confronting the defendant; or, the length of time between the offense and the identification confrontation."

The State argues that there was sufficient evidence in the record to support each of the five factors in the instruction and that the principles espoused in 
People v. Slim
, 127 Ill. 2d 302 (1989) (which adopted the factors set forth in 
Neil v. Biggers
, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972))were not violated in the least by the instruction given in the instant case.  However, 
Slim
 was a bench trial and, therefore, did not involve the issue before this court regarding IPI Criminal 4th No. 3.15.

In 
Gonzalez
, the defendant argued that he was entitled to a new trial because the trial court inserted the word "or" between the 
Neil v. Biggers
 factors of the same jury instruction at issue here regarding eyewitness testimony.  The 
Gonzalez
 court held that the use of the word "or" between each factor was erroneous because the incorporation of the term "or" between each factor implies, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability.  
Gonzalez
, 326 Ill. App. 3d at 640.

In 
People v. Furge
, 332 Ill. App. 3d 1019 (2002), the defendant also maintained that he was entitled a new trial because the trial court inserted the word "or" between the factors to be considered when IPI Criminal 3d No. 3.15 was submitted to the jury.  However, the defendant failed to raise the issue in his posttrial motions.

The 
Furge
 court held that the strength of the evidence did not merit the application of the plain error rule.  
Furge
, 
332 Ill. App. 3d at 1031.  Waiver aside, the 
Furge
 court found that its case was distinguishable from 
Gonzalez
 because the evidence was not closely balanced.  
Furge
, 
332 Ill. App. 3d at 1031. 

The 
Furge
 court also found that the error which occurred as a result of the trial court including the word "or" in the instruction was harmless.  In 
Furge
, the eyewitness had known the defendant for many years and identified the defendant by name to the police.  
Furge
, 
332 Ill. App. 3d at 1032.
(footnote: 1)
 In contrast, as previously stated, the evidence in this matter was closely balanced.  As such, it cannot be said that Saraceno's guilt was so clear and convincing as to render the trial court's error harmless beyond a reasonable doubt.  

Defendant raises four additional points of error on appeal.  As we are reversing this matter for a new trial, we will only address the one issue that is likely to recur during the new trial, the scope of the defense witnesses' testimony.  We hold that Saraceno was deprived of the opportunity to fully develop his defense of misidentification by the trial court's exclusion of relevant testimony.  The trial court abused its discretion by excluding certain testimony of both McCord and Zolecke that was relevant to show that Saraceno was misidentified.  

Albert Saraceno (Albert), the defendant's brother, was also working at the house next door to Verner's on the day of the offense.  The defense attempted to elicit testimony from McCord about Albert's age and his resemblance to the defendant in an effort to undermine Verner's identification of the defendant.  The trial court sustained the State's objections.  This was error.  Albert was at the jobsite working on the ground.  If he looked like the defendant, this would clearly be relevant to the defendant's theory of innocence.  A defendant has the right to show that someone else committed the crime.  
People v. Wilson
, 149 Ill. App. 3d 293, 297 (1986).  

The trial court also prevented McCord from testifying that he knew that Saraceno's car had mechanical problems.  This too was error because it explained why McCord was watching Saraceno so closely as he left the jobsite. With that information, it would appear more reasonable to the jury that McCord would be concerned enough about Saraceno to watch him depart.  Evidence having the tendency to make the existence of any fact that is of consequence to the determination of the case more probable than it would be without the evidence is both relevant and admissible.  
People v. Monroe
, 66 Ill. 2d 317, 322 (1977).

In addition, Zolecke testified that he had prepared a police report on the day of the offense in which he noted that when he first saw Saraceno, he was getting into a car.  The trial court sustained the State's objections to the defense questions to Zolecke asking him to describe the car, whether he searched it, and whether he found any pry tools in the car.  Zolecke's testimony that he saw Saraceno getting into a car contradicted the testimony of his partner Ehle, who testified that he saw the defendant walking toward a car, but he did not get in.  Had the defense been allowed to develop this line of questioning, it might have yielded more inconsistencies in their version of events.  Thus, the rulings by the court were erroneous. 

CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed and remanded for a new trial.

Reversed and remanded.

BUCKLEY, J.,
(footnote: 2) concurs.

QUINN, J., dissents.

JUSTICE QUINN, dissenting:

I respectfully dissent.  The majority rely upon 
People v. Gonzalez
, 326 Ill. App. 3d 629 (2001), which held that leaving the word "or" between the five factors listed in No. 3.15 of the Illinois Pattern  Jury Instructions, Criminal (3d ed. 1992), "misstated the law, was confusing and denied defendant the right to a fair trial."  
Gonzalez
, 326 Ill. App. 3d at 635.  In reaching this conclusion, the 
Gonzalez
 court relied upon the "User's Guide to the Fourth Edition of the Illinois Pattern Jury Instructions, Criminal (2000)":

"IPI Fourth employs two conjunctive forms.  The word 'and' is used to indicate additional required language.  The word 'or' is used to separate possible alternatives.  A bracketed 'or' ('[or]') is used when the user must choose between alternative paragraphs or propositions that may be given as part of the instruction when more than one alternative is applicable."    

Gonzalez
, 326 Ill. App. 3d at 639.

I would note that, contrary to the 
Gonzalez
 court's characterization of this comment, this comment does not instruct the trial courts to strike the word "or" from IPI Criminal 4Tth No. 3.15.

The 
Gonzalez
 court continued:

"The phrase preceding the five factors, stating that 'all facts and circumstances in evidence' are to be considered, does not obviate the erroneous wording of the jury instruction.  While an attorney may be able to resolve the court's instruction to 'consider all the facts and circumstances in evidence' with its use of the term 'or' between each factor, we doubt that an ordinary person acting as a juror could do the same."  
Gonzalez
, 326 Ill. App. 3d at 640. 

Finally, the 
Gonzalez
 court pointed out that the prosecutor in that case highlighted the word "or" when reading the instruction during his closing argument.  This was not done in this case.

The First District of the Appellate Court has recently addressed 
Gonzalez
 in three cases.  None of these cases have found that leaving the word "or" between the factors listed in IPI Criminal 4th No. 3.15 required reversal.  The majority distinguish the first of these cases, 
People v. Furdge
, 332 Ill. App. 3d 1019 (2002).  

In 
People v. Mercado
, 
333 Ill. App. 3d 994 (2002), decided the day after oral argument in this case, the court considered the identical issue before us and before 
Gonzalez
.  The court found that any error in the jury instructions was harmless beyond a reasonable doubt.  In doing so, the court pointed out "the first sentence of the instruction as well as all of the applicable cases clearly state that 
all
 five factors are to be considered and are not mutually exclusive."  (Emphasis in original.)  
Mercado
, 333 Ill. App. 3d at 999.  (emphasis in the original.) 

The court then looked at the committee note attached to IPI Criminal 3d No. 3.15, which was in effect at the time of trial.  It instructed the user that "[t]he bracketed numbers are present solely for the guidance of court and counsel and should not be included in the instruction submitted to the jury."  IPI Criminal 3d No. 3.15, Committee Note.  The court continued, "we agree with defendant that the word 'or' placed in brackets was also designed solely  for the guidance of the court and counsel and not to be included in the instruction to the jury."   
Mercado
, 333 Ill. App. 3d at 999.  I would point out that no authority is cited for the proposition that the bracketed "or" should not have been included in the instruction.  Indeed, if the IPI Committee wished to do so, they could have said so, as they did with the "bracketed numbers."  In the instant case, the trial court followed the comments to the letter and left out the "bracketed numbers."  In rejecting defendant's argument, the 
Mercado
 court found it significant that the prosecutor in that case did not highlight  the use of the word "or" in the instruction.  The 
Mercado
 court held: "Defendant's failure to object to this instruction at trial or raise the issue in a posttrial motion amounts to a waiver of the issue."  
Mercado
, 333 Ill. App. 3d at 999-1000. 

In 
People v. Brookins
, 
333 Ill. App. 3d 1076 (2002), the court also considered this identical issue.  In 
Brookins
, a single eyewitness observed the defendant enter a backyard and then a home across the alley from the eyewitness' third-floor apartment.  It was late at night but there was an alley light nearby.  The witness testified that she observed the defendant walking through the victim's home.  She said there was sufficient light coming from the street through the front windows of the home.  The police took the defendant into custody in the alley and the witness identified the defendant in a showup at that time.  The jury was instructed in the exact manner as the jury in this case.  Unlike here, the prosecutor commented during closing argument, "'Now, they (the five factors) are all separated, you can consider them as separate.'"  
Brookins
, 333 Ill. App. 3d at 1082.   The appellate court relied upon the holding in 
Gonzalez
 and held that "the trial court here erred in giving a version of IPI Criminal 3d No. 3.15 using the word 'or' between each of the five factors."  
Brookins
, 33 Ill. App. 3d at 1083.  The court  found that the evidence of the defendant's guilt was not closely balanced.  The court then said "we find that even if the trial court had given the proper instruction, and expressly instructed the jury to consider all five factors, the outcome of the trial would have been the same."  
Brookins
, 333 Ill. App. 3d at 1084.

I believe that the holdings in 
Furdge
, 
Mercado
 and 
Brookins
 support affirming defendant's conviction.  Verner saw the defendant in broad daylight when he was three feet from her when he entered her bedroom.  She testified that she focused on his face and yelled at him.  She called 911 and gave the dispatcher a description of the burglar.  Within three minutes of this call, Verner identified defendant as the burglar in a showup.  Defendant presented an alibi defense that he was next door to the victim's home at the time of the burglary.  While defendant worked next door, he was using a pry bar and was wearing gloves similar to those found at the point of the forced entry into Verner's home.  Based on the evidence in this case, it is clear that submitting the proper instructions to the jury would not have yielded a different result.  
People v. Shaw
, 186 Ill. 2d 301, 323 (1998).  
People v. Kirchner
, 194 Ill. 2d 502, 557 (2000).  Consequently, I would affirm defendant's conviction on this basis.

I would also affirm defendant's conviction because the instruction given was correct.  The instruction given in the instant case mirrored exactly No. 3.15 as found in IPI Criminal 3d.  The instruction also complied with the comments to IPI Criminal 4th No. 3.15, which required the court to leave out the bracketed number of the factors listed.  As pointed out previously in this dissent, the "User's Guide" to the IPI Criminal does not say that the bracketed "[or]" should be deleted from the instruction given to the jury, nor do the comments to IPI Criminal 4th No. 3.15.  Indeed, the 
only
 section of the IPI which supports defendant's theory that it is error to leave in the bracketed "[or]" between the factors in IPI Criminal 4th No. 3.15, is the sample set of instructions No. 27.02 of the IPI Criminal 3d.

Supreme Court Rule 451(a) requires trial courts to use the applicable IPI Criminal instruction unless the court determines that the instruction does not accurately state the law.  Our supreme court has recognized that the committee notes for the IPI may not always be clear and may even be wrong.  In 
People v. Shaw
, 186 Ill. 2d 301 (1998), the trial court tendered IPI Criminal No. 5.03A (Supp. 1995).  On appeal, defendant asserted that this was reversible error as the committee notes to IPI Criminal 3d No. 5.03A (supp. 1995) directed that it should only be given in the context of a felony murder case involving an alleged accomplice.  The supreme court disagreed.  

"[T]he committee's directive limiting use of the instruction to a articular fact pattern conflicts with a fundamental rule of law.  As stated in 
Ramey
, '[a]n individual instruction should not be judged in artificial isolation; rather, the instruction should be examined in light of the overall charge.'  
People v. Ramey
, 151 Ill. 2d [498] 537 [(1992)].  If all of the instructions, read together, completely and fairly state the law governing disposition of the case, no error occurs in instructing the jury.  This is true even when the instruction complained of is, alone, superfluous or misleading. 
People v. Weaver
, 18 Ill. 2d 108, 116 (1959); 
People v. Marsh
, 403 Ill. 81, 94 (1949)."  
People v. Shaw
, 186 Ill. 2d at 328-29. 

Finally, if it is not erroneous for a trial court to disregard a committee note that does not accurately state the law, it should not be erroneous for a trial court to follow a committee note that does accurately state the law (as in this case).  I would affirm this case based on the principle of waiver.  Supreme Court Rule 451(c) provides, in pertinent part, "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." 134 Ill. 2d R. 451(c).  Instructions on the burden of proof and the elements of the offense fall within the category of instructions to which the concept of waiver will not be employed to bar reversal.  
People v. Gengler
, 251 Ill. App. 3d 213, 219 (1993), citing 
People v. Pasch
, 152 Ill. 2d 133, 171 (1992).

In 
People v. Britz
, 123 Ill. 2d 446 (1988), our supreme court rejected defendant's claim on appeal that his death sentence should be reversed where the jury signed verdict forms based on improper instructions that the defendant's conduct encompassed three separate statutory factors where in fact only one statutory aggravating factor existed.

"This court finds, however, that defendant has waived the issue on appeal because he did not make any objection to the improper instructions and the verdict forms at the instruction conference or in his post-trial motions.  (
People v. Kubat
 (1983), 94 Ill. 2d 437, 492 [, 447 N.E.2d 247]; 
People v. Foster
 (1979), 76 Ill. 2d 365, 380 [, 392 N.E.2d 6].)  This court will only notice those errors which deprive defendant of his constitutional rights and will only correct 'grave' errors where there is a factually close case and fundamental fairness requires that the jury be properly instructed.  (
Kubat
, 94 Ill. 2d at 492 [, 447 N.E.2d 247].)  Furthermore, the circuit court is under no obligation to give instructions not requested by counsel.  It is trial counsel's burden of preparing and presenting jury instructions.  (94 Ill. 2d at 486 [, 447 N.E.2d 247].)  In this case, this court does not find in the record that it should refuse to apply the waiver rule.  This court does not find any error in the jury instructions in which the interests of justice require otherwise. 107 Ill. 2d R. 451(c)."  
Britz
, 123 Ill. 2d at 475.

IPI Criminal 4th No. 3.15 does not address the burden of proof or the elements of the charged offense; consequently, waiver may be applied.  
People v. Pasch
, 152 Ill. 2d at 171.  In light of the holding in 
Britz
, it cannot seriously be argued that leaving the word "or" in the instruction in this case is a "grave" error requiring reversal in the "interests of justice." 

For the above reasons, I believe that 
People v. Gonzalez
, 326 Ill. App. 3d 629, was wrongly decided and I would not follow it.  Even if I believed 
Gonzalez
 to be correctly decided, I would follow the holdings in 
Furdge
, 
Mercado
 and 
Brookins
 and I would find any error to be harmless beyond a reasonable doubt.            

                              

   

   

 

FOOTNOTES
1:
People v. Gonzalez
 and 
People v. Furge
 both concerned IPI Criminal 3d No. 3.15, not IPI Criminal 4th as this case does.  However, the instruction is the same in both editions.

2:
Justice Buckley sat during oral arguments and concurred in the result, but has since retired.