2025 IL App (1st) 240148-U

No. 1-24-0148

Order filed December 15, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 09091 |
| | ) | |
| MORRIS WILLIAMS, | ) | Honorable |
| | ) | Shelley Sutker-Dermer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly considered mitigating and aggravating evidence in imposing sentence.

¶ 2    Following a bench trial, defendant Morris Williams was convicted of robbery and sentenced to 13 years' imprisonment as a Class X offender. On appeal, defendant contends that the trial court (1) failed to adequately consider mitigating evidence and his potential for

rehabilitation, and (2) considered impermissible factors in aggravation, namely, allegations pertaining to two pending cases. We affirm.

¶ 3     In the case underlying the present appeal, case No. 22 CR 09091, defendant was charged with aggravated robbery and unlawful restraint following events on July 9, 2022, at a GameStop store. The State also brought two additional cases against defendant. In case No. 22 CR 09093, the State charged defendant with armed robbery with a firearm and unlawful restraint for taking money and Newport cigarettes at gunpoint from a Tropical Smoke Shop on July 4, 2022. In case No. 22 CR 09092, the State charged defendant with robbery and unlawful restraint for demanding money and Newport cigarettes from a Walgreens on July 6, 2022.

¶ 4     Immediately preceding trial in case No. 22 CR 09091, the State presented an agreed motion *in limine* requesting that the court disregard any facts pertaining to case Nos. 22 CR 09092 and 22 CR 09093. The court stated that it would allow witnesses "to explain their course of conduct" as to the other cases because "they're not in a vacuum," but would disregard the other cases for purposes of issuing a finding in case No. 22 CR 09091.

¶ 5     We set forth the trial evidence relevant to the issue on appeal.

¶ 6     At trial, GameStop manager Ashley Chupp testified that defendant entered the store on July 9, 2022. Distraught, he inquired about a video game. Chupp gave defendant an older game for free. Defendant then demanded money while gesturing at the register and at his waistband, as if he carried a firearm. He repeated, "This is a robbery," escalating in volume and tone.

¶ 7     Chupp heard "no verbal threat of violence or harm" and did not see a weapon. She eventually opened the register because her associate had become distraught by defendant's

demands. Defendant took money from the register, placed it inside a bag which he took from the display counter, and left.

¶ 8     The State entered into evidence and published a surveillance video of the incident. The video is included in the record on appeal and has been reviewed by this court. At trial, Chupp viewed the video and identified defendant as the perpetrator. She testified that the video shows defendant, in a white t-shirt and torn jeans, approach her at the register. Defendant gestures at the register, then reaches for a lanyard as Chupp seeks to press a button to alert a security company.

¶ 9     On cross-examination, Chupp clarified that defendant did not threaten anyone, and that she never saw a firearm. She remembered thinking that defendant's demand was "not serious." Chupp felt she could leave the store during the incident, but believed that her duty as manager required that she remain.

¶ 10    Chicago Police Department detective Billy Gonzalez testified that in July 2022 he investigated a pattern of robberies near the GameStop. After recovering surveillance videos from several stores that had been robbed, he learned "the video depicted the same offender. Same physical demographics. Same facial hair. Same facial structure. Same walk and same MO." Gonzalez identified defendant in court as the individual in the video of the GameStop robbery.

¶ 11    On July 12, 2022, Gonzalez and Detective McGovern, whose first name does not appear in the report of proceedings, interviewed defendant. The interview was recorded on Officer Mike Silius's body-worn camera. Gonzalez stated that defendant "admitted to several robberies during the interview." When Gonzalez asked defendant "what he had done two days ago," defendant replied that he had been at GameStop. Defendant then identified himself in still frame images taken from the GameStop surveillance footage.

¶ 12    The State published and entered into evidence the footage from the July 12, 2022, interview. Prior to viewing the footage, the court mentioned the motion *in limine*, noting that the video contained "questioning on multiple cases." The court stated that it would disregard information in the video that did not pertain to the July 9, 2022, GameStop robbery.

¶ 13    The footage is included in the record on appeal and this court has reviewed it. After officers read defendant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant confesses to several crimes. When asked about the July 4, 2022, Tropical Smoke Shop robbery, defendant states that he "f*** up," that he "got sick," and that he did not use a firearm. He offers to return the stolen money. The investigators show defendant images from that robbery. Defendant identifies himself in the photos. He admits to stealing "about $100" and cigarettes, adding that his illness was "why he did everything."

¶ 14    The investigators then show defendant three still frame photographs from various Walgreens robberies, noting that the offender wears the same shirt in each photo. Defendant identifies himself in the images. He states that he took money from "all three of them," and cannot recall how many cigarettes he took. He admits to robbing "probably three Walgreens."

¶ 15    One investigator then asks defendant, "Do you remember what you did two days ago?" Defendant responds, "Yeah. *** GameStop." The investigators then show defendant a still frame photo of the offender in the GameStop robbery, wearing the same jeans and white shirt as depicted in the Walgreens images. Defendant identifies himself in the photo.

¶ 16    Defendant further admits that he attempted to rob a coffee shop, and then a bakery, by demanding money from the register at both businesses. Defendant admits to acting like he had a firearm in his waistband at the bakery.

¶ 17    Throughout the video, defendant states that he was very ill and struggled with his medications in terms of access, dosage, and type. He adds that he suffers from financial hardship and needs medical care for kidney issues.

¶ 18    The court found defendant guilty of the lesser-included offense of robbery, and not guilty of unlawful restraint.

¶ 19    The presentence investigation (PSI) report indicated that defendant obtained his GED while incarcerated. He reported issues with mental health, and alcohol and illegal drug abuse, for which he received treatment at several agencies and while incarcerated. The PSI also noted that defendant had prior membership in a local street gang.

¶ 20    The PSI listed the two cases that were pending against defendant at the time of trial: case No. 22 CR 09092, charging defendant with robbery and unlawful restraint, and case No. 22 CR 09093, charging defendant with armed robbery with a firearm and unlawful restraint. Defendant's criminal history included a 2005 armed robbery conviction with six years' imprisonment, a 2007 forgery conviction with 3½ years' imprisonment, and two 2010 armed robbery convictions with concurrent terms of 18 years' imprisonment.

¶ 21    At sentencing, the State proffered what the evidence would show in the two pending cases.

¶ 22    The State recounted that in case No. 22 CR 09093, defendant was charged with armed robbery for demanding money and cigarettes from Tropical Smoke Shop on July 4, 2022. The robbery victim stated that defendant placed his right hand over the handle of a firearm tucked into his waistband and demanded that the victim empty the cash register. The events were filmed on surveillance video, which police relied upon to identify defendant. The victim further identified defendant from a photo array on July 12, 2022. The State added that in the police interview

conducted on July 12, 2022, in which defendant confessed to the GameStop robbery and which the court viewed at trial, he also identified himself in still frame images taken from Tropical Smoke Shop's surveillance and confessed to the robbery.

¶ 23    In case No. 22 CR 09092, the State charged defendant with robbery and unlawful restraint for demanding money and Newport cigarettes from a Walgreens on July 6, 2022, while wearing a mask and the same clothes that he wore in the GameStop and Tropical Smoke Shop robberies. The events were recorded on surveillance video. In the recorded interview on July 12, 2022, defendant identified himself in still frame photographs and confessed to the Walgreens robbery. The State noted that the court had already viewed defendant's self-identifications and confessions in both proffered cases when it viewed the recorded police interview during trial in the present case.

¶ 24    In further aggravation, the State noted defendant's criminal history, adding that he was eligible for Class X sentencing and subject to a sentencing range of 6 to 30 years' imprisonment.

¶ 25    In mitigation, defense counsel argued that defendant worked as a barber prior to the incident and while in jail. Counsel also disclosed defendant's mental health issues including PTSD and major depressive disorder, and physical health issues, including kidney and heart failure. While in custody, defendant completed over 102 learning hours through a self-educational program for incarcerated individuals.

¶ 26    Defense counsel posited that defendant's conduct neither threatened nor caused serious physical harm to another, and that Chupp did not feel threatened during the robbery. Also, defendant suffered from "a serious mental illness which though insufficient to establish the defense of insanity substantially affected his *** ability to understand the nature of his acts" or adhere to the law. Counsel asserted that defendant was unmedicated and distressed at the time of the incident,

but "always intended to take responsibility for his actions." Finally, counsel stated that defendant focused on his mental health while in custody by creating art.

¶ 27    The parties again clarified that defendant was eligible for Class X sentencing due to his 2005 aggravated robbery conviction and his 2010 convictions for armed robbery and armed robbery with a firearm. At that point, the trial judge informed defendant that Class X sentencing was required, adding that the State had decided to enter the two pending cases in aggravation and would "*nolle pros* those cases once I have sentenced you on the one case before me where you have been found guilty." The State added that the pending case alleging armed robbery with a firearm posed a minimum sentence of 21 to 45 years in addition to defendant's Class X status.

¶ 28    In allocution, defendant stated, "I never intended on hurting anybody. I knew nobody was ever going to get hurt. *** Nobody was ever in any danger." He added that he struggled with illness, had tried different medications for his conditions, and hoped for probation and monitoring. He stated that he had convinced himself that he was not hurting anyone, and he felt better about committing the crimes because the stores were insured and because he was unarmed.

¶ 29    In announcing sentence, the court noted that the sentencing range for robbery with a Class X enhancement was 6 to 30 years. The court agreed that defendant did not wield a weapon, noting that it found him "guilty of the simple robbery," but added that it had to consider the facts of the other two pending cases. Although "no one got hurt," the court reasoned, "that's not the basis for deciding whether these charges were actually committed and whether you were the one that were committing them."

¶ 30    The court reminded defendant that it would consider that "if [the State] proceeded on the armed robbery [in 22 CR 09093] and you were convicted of it the way it was charged, your

minimum would be 21 years on that case." The court stated that it considered defendant's mental health issues, his criminal history, the facts of the present case, and the facts of the two pending cases. The court then sentenced defendant to 13 years' imprisonment, stating, "I'm not sentencing you to 21. I'm not sentencing you to 14. *** They are not proceeding on the other cases."

¶ 31    Shortly after, the court confirmed with the State that case Nos. 22 CR 09092 and 22 CR 09093 were "over." The court concluded, "It is all going down as one sentence."

¶ 32    Defendant filed a motion to reconsider, arguing that (1) his sentence was excessive given his background and the nature of the offense; (2) the court improperly considered in aggravation matters implicit in the offense; and (3) the sentence improperly penalized him for exercising his right to trial. The court denied the motion.

¶ 33    On appeal, defendant argues that his sentence is excessive because the trial court failed to adequately consider his rehabilitative potential and relevant mitigating evidence. He also asserts that the court relied upon improper factors—the two pending cases—in aggravation.

¶ 34    The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).  The trial court is in a superior position to fashion an appropriate sentence based on firsthand consideration of the relevant sentencing factors, including the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Clark*, 2024 IL 127838, ¶ 76. Although the trial court must consider mitigating factors, it need not recite each factor and the weight given. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 73. We presume the trial court properly considered all relevant mitigating factors presented, absent some indication to the contrary other than the sentence itself. *Id.* ¶ 67.

¶ 35    This court will not reweigh the aggravating and mitigating factors, nor substitute our judgment for that of the trial court merely because we would have weighed these factors differently. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. Rather, we will only alter a sentence when the trial court abuses its discretion. *Id.* Sentences within the statutory range reflect an abuse of discretion only where they "vary greatly from the spirit and purpose of the law" or are "manifestly disproportionate to the nature of the offense." *Id.*

¶ 36    Defendant was required to be sentenced as a Class X offender due to his criminal history. See 730 ILCS 5/5-4.5-95(b) (West 2022). The sentencing range for a Class X offender is 6 to 30 years. See 730 ILCS 5/5-4.5-25(a) (West 2022). Because defendant was sentenced to 13 years' incarceration—a term within the sentencing range—we presume the sentence is proper. *Jones*, 2019 IL App (1st) 170478, ¶ 50 (a sentence within statutory limits is presumed proper and reviewed for an abuse of discretion).

¶ 37    Defendant argues that the trial court abused its discretion because it did not consider his rehabilitative potential, his financial and medical concerns, and the seriousness of his offense where his conviction involved "non-threatening conduct." We disagree.

¶ 38    The record shows that the trial court was aware of the mitigating factors now identified by defendant on appeal. The PSI report, which the trial court reviewed, reflected that defendant had reported mental health and substance abuse issues. The trial court examined and discussed the PSI report with the parties at sentencing. See *People v. Gutierrez*, 402 Ill. App. 3d 866, 900 (2010) (when a sentencing court has examined the PSI, we presume that the court has considered a defendant's rehabilitative potential).

¶ 39   At sentencing, defense counsel argued that defendant had mental health issues, including PTSD and major depressive disorder, and physical health issues, including kidney and heart failure. Counsel also asked the court to consider that at the time of the offense defendant suffered from mental health issues that "substantially affected his *** ability to understand the nature of his acts or confirm his conduct to the requirements of the law." Counsel informed the court that defendant was unmedicated and in distress at the time of the incident, but throughout "has always intended to take responsibility for his actions." Counsel further discussed defendant's career as a barber.

¶ 40   As mentioned, where, as here, mitigating factors are presented, we may presume that the trial court properly considered them absent some indication to the contrary. *Kindle*, 2021 IL App (1st) 190484, ¶ 67. We find no such indication here.

¶ 41   Given that the mitigating factors defendant raises on appeal were discussed in the PSI report and defense counsel's arguments, defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court. This we cannot do. See *Jones*, 2019 IL App (1st) 170478, ¶ 50 (a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently).

¶ 42   Finally, the record belies defendant's claim that the trial court failed to consider the seriousness of the offense. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53 (the seriousness of the offense is the most important factor in determining a sentence). In announcing sentence, the court agreed with defendant that he did not wield a weapon and acknowledged that "no one got hurt." The court also heard Chupp's trial testimony as to the robbery. Thus, defendant has failed to affirmatively show that the court did not consider the relevant factors when the record

demonstrates otherwise. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11 (defendant must affirmatively show that the trial court did not consider relevant factors).

¶ 43 Defendant next contends that the trial court impermissibly relied on the allegations in the State's two proffered cases in aggravation. The State responds that defendant either forfeited this claim, or, alternatively, invited the alleged error. Defendant replies that this issue was properly preserved in his motion for reconsideration or, in the alternative, is reviewable as plain error.

¶ 44 "A defendant generally forfeits review of the circuit court's consideration of improper evidence at a sentencing hearing if he fails to object at the hearing and fails to raise the issue in a postsentencing motion." *People v. Johnson*, 2024 IL 130191, ¶ 40. The record shows that defense counsel did not object to the State's proffer at sentencing. Further, defendant's motion to reconsider did not raise this issue. See *People v. Mercado*, 333 Ill. App. 3d 994, 1002 (2002) (defendant's argument waived where he argued excessive sentence, but failed to claim improper factor in aggravation, in postsentencing motion). Accordingly, defendant has forfeited this claim.

¶ 45 Yet, "[t]he plain error rule is a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default." *Johnson*, 2024 IL 130191, ¶ 41. "[D]esigned to protect the defendant's rights and the reputation of the judicial process," this rule provides for a narrow exception to forfeiture. *Id.* ¶ 42.

¶ 46 The plain error rule allows reviewing courts to review a forfeited error when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* ¶ 43. Under either

prong, the defendant bears the burden of persuasion. *Id.* A court must first determine whether clear or obvious error occurred. *Id.* ¶ 44.

¶ 47 A trial court has broad discretion when determining an appropriate sentence. *Wilson*, 2016 IL App (1st) 141063, ¶ 10. Although a trial court may not rely on bare arrests or pending charges in aggravation, the court may rely on evidence of a defendant's other criminal activity, even if that conduct has not resulted in a conviction, where the trial court finds the evidence to be relevant and accurate. See *People v. Minter*, 2015 IL App (1st) 120958, ¶ 148. A mere list of arrests or charges in a PSI report, unsupported by testimony or other evidence at the sentencing hearing, fails to meet those standards because, absent support, the trial court lacks a basis upon which to decide whether defendant actually committed the alleged acts. *Id.* ¶¶ 148, 150; see also *People v. Johnson*, 347 Ill. App. 3d 570, 576 (2004) (trial court impermissibly considered bare fact that defendant had been arrested for a sexual assault); *People v. Wallace*, 145 Ill. App. 3d 247, 256 (1986) (trial court improperly considered pending rape charge as aggravating factor). Whether a trial court relied on an improper factor in imposing sentence is a question of law subject to *de novo* review. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 48 At the outset, the record shows the parties engaged in multiple discussions with the trial court regarding all three cases, and that testimony and evidence overlapped in all three cases.

¶ 49 At sentencing, the State proffered what the evidence would show in the two pending cases against defendant. *People v. Williams*, 149 Ill. 2d 467, 490 (1992) (proffered evidence is admissible at sentencing provided it is relevant and reliable); *People v. La Pointe*, 88 Ill. 2d 482, 498 (1981) (evidence considered at sentencing must be relevant and accurate). The State recounted the charges and allegations in each case and directed the court's attention to defendant's recorded

confession to the robberies in the pending cases. The State reminded the court that it had already viewed the video at trial.

¶ 50    The video, which was entered into evidence and published, is included in the record on appeal and shows defendant's police interview. During the interview, defendant identified himself in still frame images taken from surveillance cameras in the two pending cases and explained why he committed the robberies. Thus, the court had some basis—defendant's own confessions—upon which to determine whether he had committed the robberies.

¶ 51    As such, unlike the cases cited by defendant, the record here consists of more than a mere list of arrests or charges in a PSI report. See *Minter*, 2015 IL App (1st) 120958, ¶ 148 (remanding for resentencing where the trial court impermissibly relied on two pending cases listed in the defendant's PSI that the State argued, without presenting evidence, showed defendant had "decided to conduct further acts of violence"); *Johnson*, 347 Ill. App. 3d at 576 (trial court erred when it considered bare evidence of the defendant's arrest). Rather, the court heard the State's proffer regarding the pending cases and viewed defendant's video recorded confession to those cases. Stated differently, the trial court did not err in finding the pending cases relevant and accurate, and in considering them in imposing sentence. *La Pointe*, 88 Ill. 2d at 498.

¶ 52    Accordingly, we affirm the court's sentence of 13 years' imprisonment.

¶ 53    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 54    Affirmed.